UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                              Case No.: 23-13357-PDR
                                                                    Chapter 13
DAVID WALLACE GEMMELL

     Debtor.
_____/

**OMNIBUS OBJECTION TO CLAIMS #10-12 OF
AREZOU SHAHBAZI, JOSHUA KATS, AND SEAN HERSHBERGER**

**IMPORTANT NOTICE TO CREDITOR:
THIS IS AN OBJECTION TO YOUR CLAIM**

**This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf. Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.**

**If you disagree with the objection or the recommended treatment, you must file a written response WITHIN 30 DAYS from the date of service of this objection, explaining why your claim should be allowed as presently filed, and you must serve a copy to the undersigned attorney OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.**

**The written response must contain the case name, case number, and must be filed with the Clerk of the United States Bankruptcy Court.**

     DAVID WALLACE GEMMELL (*hereinafter*, the "Debtor" or "Mr. Gemmell"), by and through undersigned counsel, hereby files this Omnibus Objection to Claims #10-12 (*hereinafter*, the "Objection") of Arezou Shahbazi (*hereinafter,* "Shahbazi"), Joshua Kats (*hereinafter,* "Kats"), and Sean Hershberger (*hereinafter,* "Hershberger"), pursuant to 11 U.S.C. §502(b) and Rule 3007 of the Federal Rules of Bankruptcy Procedure, demanding Claims #10-12 (collectively, *hereinafter,* the "Claims") be stricken and disallowed in the entirety, and in support thereof, states as follows:

## PROCEDURAL AND FACTUAL HISTORY

1. On April 28, 2023, the Debtor filed his voluntary petition for relief under Chapter 13 of the Bankruptcy Code. *See* Exhibit "A"; DE #1.

2. The Debtor listed Shahbazi, Kats, and Hershberger as creditors with a disputed, unliquidated, contingent, general unsecured claim valued at an unknown amount.[1] *See* Exhibit "A"; DE #1, Schedule E/F.

3. The Debtor also listed a pending state court proceeding in the Superior Court for Los Angeles County, California – Santa Monica Division with Case No. 23SMCV00652 and styled as *Arezou Shahbazi, Joshua Kats, and Sean Hershberger v. David Gemmell, et al.* (*hereinafter,* the "California Action"). *See* Exhibit "A"; DE #1, Statement of Financial Affairs.

4. On June 26, 2023, Shahbazi, Kats, and Hershberger (collectively, *hereinafter,* the "CA Claimants") filed Proofs of Claim #s 10–12 as identical general unsecured claims each in the amount of $125,000.00 on the basis of "Money Loaned" and attached a copy of the operative complaint (*hereinafter,* the "Complaint") filed in the California Action.

5. The basis of the four (4) count Complaint arose out of a Florida Shareholder Agreement (attached to the Complaint and to the Claim; *hereinafter*, the "FL Agreement") by and between the Debtor, Shahbazi, Kats, Hershberger, Cleo Vidican, and Dentistry X (*hereinafter,* the "Parties"). *See* Exhibit "B"; FL Agreement.

6. Although the FL Agreement refers to a "corporation," upon information and belief, the Parties entered into the FL Agreement with the intention to form a Florida Limited Liability Company, called Dentistry X.

---

[1] The Debtor had no contact information for neither Shahbazi, Kats, nor Hershberger; however, notice of the bankruptcy filing was mailed and emailed to their counsel in the California Action, Stephen B. Morris, Esq.

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite. 206, Plantation, FL 33324
Phone: (754) 900-6545 | Fax: (754) 203-2700 | Email: service@lightgonzalezlaw.com | Web: https://lightgonzalezlaw.com

7. On or around October 23, 2019, according to the Florida Division of Corporations as reflected on Sunbiz.org, Dentistry X filed its Articles of Organization for Florida Limited Liability Company. *See* Exhibit "C"; Dentistry X's FL LLC Filing.

8. The vision and goal for Dentistry X was to offer virtual radiology services to other medical specialists, including consulting, x-ray analysis, surgical guidance, and contributing to the Dental AI project.

9. Prior to and necessitating the formation of Dentistry X, the Debtor had several promising business prospects and soft agreements; hence, the Debtor's need to seek capital contribution investors. The Debtor shared his business plan and projections with the CA Claimants in a bid to solicit their investments.

10. According to the FL Agreement, each of the CA Claimants were to invest $75,000.00 in exchange for a five percent (5%) stake in Dentistry X. The Debtor does not dispute that the funds for such initial investments were transferred to Dentistry X. Further, the investment funds were used in the ordinary course of business, including payment of the Debtor's salary as manager of Dentistry X.

11. According to the FL Agreement, the Debtor was entitled to a salary of $300,000.00 per year. The Debtor received no more than such amount from Dentistry X in any given twelve (12) month period.

12. Additionally, the CA Claimants were not silent investors; they were expected to contribute to the growth of Dentistry X by, at a minimum, (1) engaging new clients, (2) assisting with marketing, and (3) performing day-to-day operations as necessary. The CA Claimants were entitled to, and did so receive, a wage for their performance of services provided to clients on behalf of Dentistry X.

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite. 206, Plantation, FL 33324
Phone: (754) 900-6545 | Fax: (754) 203-2700 | Email: service@lightgonzalezlaw.com | Web: https://lightgonzalezlaw.com

13. Paragraph #5 of the Complaint in the California Action states that Dentistry X "was a limited liability company formed under the laws of the State of Florida, [and did] business in Los Angeles California and elsewhere." *See* Exhibit "D"; Complaint, as attached to the Claims.

14. Dentistry X did in fact open a principal office at the University of Florida and operate a website where medical professionals could utilize and pay Dentistry X for virtual medical services. The CA Claimants and various employees / contractors, working in the comfort of their own homes (both inside and outside of Florida), were able to provide such services via the Dentistry X website.

15. At some point in early 2020, the Parties collectively had various concerns as to entity structure, including the location of Dentistry X's business registration; hence, on or around February 3, 2020, Dentistry X formed a limited liability company in Wyoming. *See* Exhibit "E"; Dentistry X's WY LLC Filing.

16. Contemporaneously, on or around February 11, 2020, a Wyoming Shareholder Agreement was executed by the Parties (*hereinafter*, the "WY Agreement"). *See* Exhibit "F"; WY Agreement.

17. Although the WY Agreement refers to a "corporation," upon information and belief, the Parties entered into the WY Agreement with the intention to form a Wyoming Limited Liability Company.

18. Paragraph 11 of the WY Agreement provided for the cancellation of any prior agreements with respect to Dentistry X—the Parties were in agreement that the FL Agreement would be cancelled in favor of registering and transacting business in Wyoming. *See* Exhibit "F"; WY Agreement, ¶ 11.

19. Later, on or around July 9, 2020, the Florida Limited Liability Company was

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite. 206, Plantation, FL 33324
Phone: (754) 900-6545 | Fax: (754) 203-2700 | Email: service@lightgonzalezlaw.com | Web: https://lightgonzalezlaw.com

dissolved. *See* Exhibit "G"; Dentistry X's FL Articles of Dissolution.

20. Dentistry X did not 'transfer' from Florida to Wyoming; it simply dissolved in Florida and used the WY Agreement to reorganize in Wyoming, albeit not in perfect chronological order.

21. In or around December 2020, the CA Claimants, by and through representative counsel, demanded that Mr. Gemmell buyout all of their shares pursuant to the Shareholder Agreement's pre-emptive rights or 'buyback' provision.

22. In response to the CA Claimants wishing to exit, the Debtor was forced into a precarious position of either seeking new investors to fund the purchase of their shares or losing the business entirely.

23. Negotiations were ultimately fruitless, and Dentistry X ceased operating in the beginning of 2021.

24. On or around April 11, 2022, Dentistry X WY was administratively dissolved. *See* Exhibit "H"; State of Wyoming Filing Information of Dentistry X, LLC.

25. Shareholders—including both the Debtor and the CA Claimants—of the dissolved Dentistry X received no distribution in return for capital contributions.

## INTRODUCTION TO ARGUMENT

The Claims list "Money Loaned" as the basis for a $125,000.00 valuation—times three is $375,000.00 in claims. However, in no way is the relationship between the CA Claimants and the Debtor a lender/borrower relationship. Money was not loaned to the Debtor, nor was money loaned to Dentistry X; there is no promissory note. The CA Claimants each invested $75,000.00 in Dentistry X in exchange for an equity interest, and the funds were remitted directly to the Dentistry X bank account. The investment was a capital contribution towards a joint venture.

Since the business failed and had no assets available for distribution to any of its investors, the CA Claimants are now improperly seeking recourse directly from the Debtor.

While disputing liability and the existence of individual claims, the Debtor listed Shahbazi, Kats, and Hershberger as creditors in an abundance of caution due to the filing of the California Action approximately two months prior to the bankruptcy case filing. Pursuant to 11 U.S.C. §502(b)(1), the Debtor objects to these Claims as they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." For the following reasons, further developed below, the Claims should be stricken and disallowed in the entirety.

## MEMORADUM OF LAW

**I.     The CA Claimants Do Not Hold A Claim Against The Debtor As Defined By The Bankruptcy Code And Prevailing Caselaw.**

In a Chapter 13 case, equity interests arising from capital contributions are not 'debts' as that term is defined by the Bankruptcy Code, nor do they constitute "claims." *In re Lorenzo*, 2011 WL 285628 (Bankr. M.D. Fla. 2011). The Court may consider a variety of factors to determine whether the payable is debt or equity. *Id.* at 6, citing *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 248 (M.D. Fla. 1994). While there are several factors to consider, and more beyond those enumerated, the *Hillsborough Holdings* court went on to say:

> When a corporation is thinly capitalized, an advance provided to it is more likely to be characterized as a capital contribution. This is especially the case when the debt to equity ratio is initially high, when the parties recognize that the ratio may increase, and when a large portion of the funds advanced were used to meet expenses needed to commence operations.

*Id*. at 84–85 (finding that adequate capitalization served as strong evidence that the particular advances made to the debtor were properly categorized as loans.)

By instituting the California Action and by filing the Claim, the CA Claimants are seeking a return on their investments made to Dentistry X, but from the Debtor. The investments were

capital contributions made in return for stock, pursuant to a Shareholder Agreement (whether the FL Agreement or the WY Agreement), recovery of which was directly tied to the profitability of Dentistry X.  The capital contributions of the CA Claimants were made to Dentistry X as a joint venture with the Debtor.  Nothing in the Shareholder Agreement(s) or within the Parties' dealings would indicate otherwise.  Therefore, the invested funds were for the purchase of equity and are not entitled to status as a "debt".

> **II.    Any Breach Under The Shareholder Agreement Should Be Brought As A Derivatives Claim, Not As A Direct Claim.**

Unlike a typical bilateral contract, an operating agreement or shareholder agreement establishes a much more nuanced and complicated set of contractual rights and duties.  *Demir v. Schollmeier*, 199 So. 3d 442 (Fla. 3rd DCA 2016).  The individual members/parties to a shareholder agreement are generally not liable for <u>obligations</u> or decisions of the company. *Id*. (emphasis added).  Moreover, it is only appropriate for shareholders to bring individual actions where there is "both a direct harm and a special injury."  *Strazzulla v. Riverside Banking Co.*, 175 So. 3d 879 (Fla. 4th DCA 2015).  Such an exception further requires "a separate statutory or contractual duty owed by the wrongdoer to the individual shareholder." *Id*. at 885.

The FL Agreement was entered into by and between the CA Claimants, the Debtor, and one another individual in order to found Dentistry X and to establish the individuals' rights as shareholders / members / managers. Notwithstanding the buyout provision(s) describing the mandatory procedure(s) for selling or otherwise transferring shares, nothing in the FL Agreement created a duty among the individuals to each other—for example, Mr. Gemmell did not contract with the CA Claimants for a loan.  On the contrary, all of the individuals made and received promises <u>to and from Dentistry X</u>.  Further still, Dentistry X did not contract with any individual for a loan.  The FL Agreement acted to shield the Debtor from individual liability.

Interestingly, the WY Agreement was not executed by the same individuals as the FL Agreement; it was executed by the CA Claimants as authorized representatives of various LLCs none of which have filed proofs of claims. While the Debtor argues that the FL Agreement was novated by the WY Agreement, much of this Objection discusses the FL Agreement due to the CA Claimants' Complaint and attachment of the FL Agreement to the Claim. On information and belief, Dentistry X distributed exactly $0.00 in value to each and every shareholder upon dissolution, including Debtor who was the majority shareholder of Dentistry X. Such a common injury to all shareholders is per se evidence that no direct claim exists amongst the shareholders. Therefore, the CA Claimants lack standing to bring individual claims against the Debtor.

### III.     Additional State Court Defenses Exist To Defeat The California Action.

*A.  California Lacks Personal Jurisdiction Over the Debtor Relating to this Claim.*

The CA Claimants filed suit in California in 2023 against the Debtor as a means of collecting on their alleged claims. Since at least 2017, the Debtor has resided in Florida with his non-filing spouse and young children. Additionally, Dentistry X was operated via its website which was setup and managed in Florida. The Debtor has not travelled to California since at least 2017. The CA Complaint recognizes that Mr. Gemmell resides in Florida, and fails to establish sufficient minimum contacts for the California court to exercise personal jurisdiction. *See Kaiser Aetna v. Deal*, 86 Cal.App. 3d 896 (Cal. First DCA 1978) (finding that no tortious act or omission was committed within California, and therefore the court did not have jurisdiction); *United Techs Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction."). Failing to establish personal jurisdiction is grounds to dismiss a lawsuit pursuant to Rule 12(b)(2) of the Federal Rules of Civil

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite. 206, Plantation, FL 33324
Phone: (754) 900-6545 | Fax: (754) 203-2700 | Email: service@lightgonzalezlaw.com | Web: https://lightgonzalezlaw.com

Procedure. Therefore, the California Action would likely be dismissed for lack of personal jurisdiction over Mr. Gemmell.

> B. *The California Action Would Fail On The Merits And Other Defenses.*

The CA Complaint alleges in Count IV that Mr. Gemmell made false representations regarding expectations of return on investment. The Parties then entered into the FL Agreement, which expressly includes a merger clause disclaiming any conditions, warranties and representations made to the parties prior to entering into the agreement:

> This Agreement constitutes the entire agreement between the Parties and supersedes any previous agreement or representation with respect to the matters set forth in this Agreement, and there are no conditions, warranties, representations, agreements, express or implied, relating to such matters.

*See* Exhibit "B"; FL Agreement, ¶ 57. As such, any and all agreements and representations relied upon between the Parties were reduced to writing and contained within in the FL Agreement.

Thereafter, Dentistry X in fact began operating, hired a marketing team, and obtained numerous clients. The Parties regularly held meetings to discuss various Dentistry X related matters, including brainstorms for increasing revenue. The Parties eventually determined that it was in their own individual best interests to reform Dentistry X as a Wyoming LLC. The WY Agreement also includes a merger and novation clause:

> This Agreement contains the entire understanding between the parties and supersedes and cancels all prior agreements of the parties, whether oral or written, with respect to such subject matter.

*See* Exhibit "F"; WY Agreement, ¶ 11.

If the CA Claimants ever had a claim for fraudulent representation under the FL Agreement, that claim was extinguished upon entering into the WY Agreement. Furthermore, even if such a claim still exists, the CA Claimants would not succeed in any court on an individual claim for fraud against the Debtor. The false representations CA Claimants have alleged are all

related to soft agreements Mr. Gemmell negotiated with potential clients and expectations for marketing activities. Those soft agreements did exist; however, even though they (mostly) did not materialize into clients, Dentistry X still operated to the best of its ability to turn a profit for investors. The marketing activities also took place. There cannot be a finding of any intentional, fraudulent misrepresentation if the representations were actually true. For those reasons, the CA Claimants would likely fail to establish liability of Mr. Gemmell in an individual action.

## CONCLUSION

The basis of the alleged debt has been reduced to the Complaint in the California Action. The Debtor listed this lawsuit in his Statement of Financial Affairs, and listed each plaintiff as a creditor with an unliquidated, contingent, disputed debt with an unknown value. The Claims are either not a 'debt' or the California Action would fail if litigated outside of bankruptcy court. As such, the Claims are not enforceable against the Debtor or property of the Debtor pursuant to the 11 U.S.C. §502(b)(1). Moreover, the CA Claimants are not creditors as provided by 11 U.S.C. §501(a). For all of the reasons provided herein, the Claims should be stricken and disallowed in the entirety.

WHEREFORE, the Debtor, DAVID WALLACE GEMMELL, respectfully requests this Court enter an Order (i) sustaining this Omnibus Objection; (ii) striking and disallowing Proofs of Claim #s 10–12 of Arezou Shahbazi, Joshua Kats, and Sean Hershberger, and; (iii) for whatever other and further relief this Court deems just and proper.

**LIGHT & GONZALEZ, PLLC**
**Attorneys for the Debtor**

8751 W. Broward Blvd., Suite #206
Plantation, FL 33324
Email: dustin@lightgonzalezlaw.com

By: /s/ *Dustin Piercy*
**Dustin Piercy, Esq.**
Florida Bar No.: 1030710